DIEMER & WEI, LLP
Kathryn S. Diemer, SBN 133977
Susan B. Luce, SBN 120843
55 South Market St., Ste 1420
San Jose, CA 95113
Tel: 408-971-6270
Fax:408-971-6271
kdiemer@diemerwei.com
sluce@diemerwei.com

Attorneys for Plaintiffs

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**MART ALBERT HAITJEMA and ELAINE WAYYIN CHOW,**<br><br>**Debtors** | **Case No. 25-30702 - 13**<br><br>**Chapter 13**<br><br>**Honorable Hannah L. Blumenstiel** |
| **GEORGE YU and FRANCES HO,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**MART ALBERT HAITJEMA and ELAINE WAYYIN CHOW, and DOES 1 -10**<br><br>**Defendants.** | **APN:**<br><br>**COMPLAINT TO DETERMINE DEBT TO BE NON-DISCHARGEABLE (11 U.S.C. § 523(a)( 4);1328(a)(2))** |

Plaintiffs, George Yu and Frances Ho, bring this adversary complaint seeking a determination that the debt owed to them by Mart Albert Haitjema and Elaine WayYin Chow

("Debtors") is not dischargeable. The amount of the debt and the findings of the jury are contained in the Judgment on Jury Verdict for the matter of *George Yu and Frances Ho v. Mart Haitjema and Elaine Chow*, Case No. CGC-23-607795, Superior Court of California, County of San Francisco. Plaintiffs contend the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(4), made applicable to this proceeding by 11 U.S.C. 1328(a)(2).

**JURISDICTIONAL ALLEGATIONS**

1. This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 et seq. and 11 U.S.C. §523(a)(2)(A), made applicable by 11 U.S.C. §1328 (a)(2).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. 1409.

4. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O).

5. In accordance with Local Bankruptcy Rule 7008-1, Plaintiffs consent to entry of a final Order or Judgment by this Court.

**PARTIES**

6. Plaintiffs, George Yu and Elaine Ho, are residents of San Francisco County, California.

7. Defendants, Mart Haitjema and Elaine Chow, are residents of San Francisco County as indicated on their Voluntary Petition filed on September 4, 2025.

8. Each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant assisted, ratified acted in concert and/or authorized the wrongful acts of the other Defendants.

9. Plaintiffs do not know the true names and capacities of defendants named herein as Does 1 through 10 and sues these defendants by such fictitious names. Plaintiffs

will file an amendment to this complaint to allege said Doe defendants' true names and capacities when ascertained.

## GENERAL ALLEGATIONS

10. Plaintiffs purchased 1921 Broderick Street, a three-story condo in San Francisco, in 2002.

11. As owners of 1921 Broderick Street, they are members of the 1919-1921 Broderick Street Homeowners' Association ("HOA").

12. Defendants are the owners of 1919 Broderick Street, a two-story condo in San Francisco, which they purchased in December of 2020. The condominium association contains two units: 1) owned by Plaintiffs, and 2) the other owned by the Defendants. Necessarily all owners of the two condominiums in the association are members of the HOA. Defendant Mart Haitjema was President of the HOA during the events discussed herein.

13. The HOA is governed by First Amended and Restated Declaration of Covenants, Conditions and Restrictions Of 1919-1921 Broderick Street, recorded on November 12, 2020 ("CCRs").

14. The property owned by Plaintiffs includes an easement for the exclusive use of the deck area designated as "D-1" on the parcel map. (Plaintiffs will refer, herein, to the D-1 deck area as the "deck".)

15. Plaintiffs' deck, "D-1", is the area above the Defendants' second story. D-1 is granted an "Exclusive Use Common Area" of Plaintiffs' Unit, 1921 Broderick Street, per the CCRs,

16. Plaintiffs are informed and believe that a leak developed in Defendants' roof area, which is under their deck. Plaintiffs had no opposition the President of the HOA

doing his duty to facilitate the maintenance and repair of common areas. They expected that authorized and licensed contractors would repair the roof and then replace their deck.

17. In March of 2023, without Plaintiffs' approval or consent, Defendant Haitjema hired unlicensed workers and directed them to demolish Plaintiffs' deck (D-1).

18. Defendant Haitjema proceeded with the roof repair for his Unit, but left Plaintiffs' Deck exclusive common area deck unusable. Defendants refuse to allow the repair of the deck, and they have installed 3 Ring cameras around the area of the deck. When Plaintiffs tried to fix the deck, Defendants saw it on camera and caused the ring cameras to shout at the contractors to "get their fat asses off my roof" such that licensed contractors will not entertain the prospect of working on the roof. The cameras are used to insure Plaintiffs' deck does not get reinstalled. The ring cameras channel the voice of the person making the statements. Both Elaine Chow and Mart Haitjema have yelled at contractors that Plaintiffs have brought on the property in order to quote the repairs to the deck.

19. Defendants left a large debris pile containing the items removed from their roof and the deck in the common area back yard. The debris pile, as it was construction materials, posed a risk of soil contamination. Plaintiffs tried to work with Mr. Haitjema and Ms. Chow to remove the debris pile in order to prevent further harm to the property through contamination. Mr. Haitjema and Ms. Chow refused to allow the removal of the debris pile. At one point after the filing of the bankruptcy, Mr. Haitjema and Ms. Chow, both, began yelling at Plaintiffs. Ms. Chow specifically stated to Plaintiffs, during the altercation, that Plaintiffs "will never get their deck back." Eventually, Plaintiffs, in order to prevent the

toxic ground contamination, paid for the debris pile to be removed. Because Mr. Haitjema and Ms. Chow prohibited them from using any part of their unit or non-interior spaces, it was significantly more expensive to remove the debris pile.

20. Prior to the removal of the debris pile, which included a high percentage of aged wooden materials as well as other types of building debris, Mr. Haitjema would barbecue quite close to the debris pile, risking setting the debris pile on fire, a significant concern for the two wooden condominium units.

21. Ms. Chow and Mr. Haitjema have both specifically stated to the Plaintiffs that they will never get their deck back.

22. Mr. Haitjema is the President of the HOA. Mr. Haitjema's refusal to cooperate and allow the reconstruction of the Plaintiffs' deck has harmed both the Debtors and the Plaintiffs.

23. Ms. Chow's insistence on cooperating with her husband, Mr. Haitjema – the President of the HOA, to act to prevent Plaintiffs from repairing the deck, and to prevent Plaintiffs from clearing up the debris pile, as well as to prevent Plaintiffs from collecting those funds expended on the litigation to try to resolve the problem was all done in concert and intentionally.

24. Neither party can sell their property due to the non-conforming and unauthorized changes to the recorded Plan and CCRs related to access, enjoyment and use of the area assigned to Plaintiffs' Unit caused by the acts of Ms. Chow and Mr. Haitjema.

25. HOA President Haitjema, as an officer of the HOA, owed a fiduciary duty to Plaintiffs to see to it that the CCRs were upheld and enforced and to not interfere with Plaintiff's property and enjoyment thereof. He was entrusted with the protection and care of the common areas.

26. Paragraph 11.7 of the CCRs provides that the prevailing party in an arbitration or civil action shall be entitled to recover all costs and expenses, including reasonable attorneys' fees.

27. After the decision in the state court proceeding determining the prevailing party and in reliance on the CCRS, Plaintiffs filed a motion for fees, seeking a total of $1,113,788.25 in fees and costs. Plaintiffs have incurred significant additional costs since the trial court, including the costs of removing the debris pile, the costs related to this bankruptcy to try to get the equitable issues herein resolved, as well as the costs of trying to repair the roof.

28. The hearing on the motion for fees was set for August 8, 2025. Debtors informed Plaintiffs that they would file a petition for Chapter 13 bankruptcy prior to any hearing on Plaintiffs' motion for fees.

29. Debtors suggested trying to settle again. Based on that, the Parties jointly requested a postponement of the hearing on fees. The Court granted the request and rescheduled the hearing for September 5, 2025.

30. On September 4, 2025, the Debtors filed for relief under Chapter 13 of the United State Bankruptcy Code.

## **CLAIM FOR RELIEF**

### **To Except from Discharge the Debt for Breach of Fiduciary Duty (11 U.S.C. § 523 (a)(4))**

31. Plaintiff hereby incorporates and re-alleges all allegations in this complaint in paragraphs 1 through 30 as if set forth herein.

32. Due to Defendant Haitjema's position as President of the HOA, he had a fiduciary duty to the association and homeowners, to act in good faith and with loyalty.

Defendant Chow assist Haitjema, in preventing the rebuilding of the deck, and in harming the HOA.

33. Mr. Haitjema was entrusted with the care and protection of the common areas. He was to facilitate the maintenance of all the common areas. As President of the HOA, Mr. Haitjema was to retain appropriate repair persons, specifically licensed contractors, and and follow the mandates of the CCRs.

34. Defendant Haitjema was to enforce the rules fairly (no self-dealing), and make informed, rational decisions under the Business Judgment Rule.

35. Instead, Defendant Haitjema used his position to further his personal agenda and, in essence, stole property belonging to Plaintiffs by destroying their deck and refusing to allow its replacement. Defendant Haitjema, with the assistance of Defendant Chow have interfered and made impossible the task of replacing the deck. Defendant Haitjema and Defendant Chow, together, have worked together to increase the costs to the HOA related to the removal of the debris. Defendant Haitjema and Defendant Chow, acting together have increased the costs, and damages to Plaintiffs.

36. Plaintiffs have suffered the loss of their deck which added 675 square feet of outdoor living area. This has interfered with their alienation rights. They cannot move even if they wanted to do so. Without the existence or use of their deck, the Unit cannot be sold because it is not in conformance with the deed.

37. The cost to repair the deck was determined to be $120,000 at the time of the decision of the jury. The cost has increased since the date of the trial, in part due to the actions of the Defendants, including the increase in attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request:

That this Court find and adjudge that all monies owed to Plaintiffs, including the amount for repair of the deck, the amount for removal of the debris pile, the cost to remediate any toxic environmental issues caused by the debris pile, the amounts awarded by the California State Court, the attorneys fees and costs to correct the situation are due to Plaintiffs by Defendants Haitjema and Chow for the damage to their Property is nondischargeable pursuant to 11 U.S.C. §523(a)(4) made applicable to this proceeding by 11 U.S.C. 1328(a)(2).

And for such other relief the Court deems just and proper.

Dated: December 15, 2025

DIEMER & WEI, LLP

*/s/ Kathryn S. Diener*

Attorneys for Plaintiffs